UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FIRAS ADNAN DAWOOD,

        Plaintiff,

v.                                                       Case No. 22-cv-11080

USCIS DETROIT DISTRICT
DIRECTOR, *et al.*,

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Plaintiff Firas Adnan Dawood seeks *de novo* judicial review pursuant to 8 U.S.C. § 1421(c) of the United States Citizenship and Immigration Services' ("USCIS") denial of his Form N-400, Application for Naturalization. (ECF Nos. 1, 10-1.) Plaintiff specifically challenges USCIS' finding that he failed to establish himself as a person of good moral character because he gave false testimony to obtain an immigration benefit, thereby compromising his naturalization eligibility. (ECF No. 10-1.) Pending before the court is Defendant USCIS Detroit District Director's Motion to Dismiss. (ECF No. 11.) The motion has been fully briefed. The court finds oral argument to be unnecessary. E.D. Mich. LR 7.1(f)(2). For reasons explained below, the court will deny Defendant's motion.

**I. BACKGROUND**

The following information is taken from Plaintiff's Amended Complaint (ECF No. 10-1) and exhibits filed in support of his original and amended complaints (ECF Nos. 1-1, 5-2.) Plaintiff is a native and citizen of Iraq. (ECF No. 10-1, PageID.64.) On June 1, 2002, he entered the United States on a K-1, non-immigrant visa, commonly referred to

as a "fiancé visa." (ECF No. 5-2, PageID.22.) On January 13, 2003, using Form I-589, Plaintiff applied for asylum, listing two separate arrests as the basis for his claim. (Id.) Plaintiff reported that his first arrest occurred in Iraq on December 12, 1997, wherein he was detained by Ba'ath Party Officials for fifteen days due to his Catholic faith. (Id.) Plaintiff reported that his second arrest occurred in Iraq on November 18, 1999, wherein he was detained by local Iraqi police officers for five days. (Id.) After undergoing the appropriate interview process, on May 5, 2003, Plaintiff was issued a Referral Notice to the Executive Office for Immigration Review (EOIR). (Id.) On October 27, 2003, Plaintiff filed a second Form I-589 with the EOIR, again listing the two arrests in Iraq. (Id.) In February of 2005, after a hearing was held before the Detroit Immigration Court, Plaintiff's applications for asylum were denied, as were his subsequent appeals to the Board of Immigration Appeal (BIA) and Sixth Circuit. (Id.) However, after the passage of the 2007 Refugee Crisis in Iraq Act, on December 10, 2008, the BIA granted Plaintiff's motion to reopen his asylum proceedings and accepted a third Form I-589, which again listed the same Iraq arrests as a basis for asylum. (Id.) Eventually, on June 16, 2010, Plaintiff was granted asylum. (Id.)

On June 20, 2011, Plaintiff filed a Form I-485 to apply and register for permanent residence status. (ECF No. 5-2, PageID.22.) In that application, he marked "Yes" in response to question 1.b, "Have you ever been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?" Apparently, he was not asked to elaborate. On September 14, 2011, his Form I-485 was approved without an interview. (Id.)

2

On August 6, 2019, Plaintiff filed a Form N-400 to apply for naturalization, the ultimate denial of which forms the basis of this lawsuit. (ECF No. 5-2, PageID.23.) As part of that application, he was required to answer the following questions:

> Part 12. Question 23: Have you **EVER** been arrested, cited, or detained by any law enforcement officer (including any immigration official or any official of the U.S. armed forces) for any reason?
>
> Part 12. Question 24: Have you **EVER** been charged with committing, attempting to commit, or assisting in committing a crime or offense?
>
> Part 12. Question 28.A.: Have you **EVER** been in jail or prison?

(Id.; see also ECF No. 15-1, PageID.129.) Plaintiff responded "yes" to questions 23 and 24 and "no" to question 28. (Id.) Due to his "yes," responses, Plaintiff was required to provide further explanation in a table matrix demarcated Question 29 of Part 12, wherein he listed only a dismissed "assault or assault and battery" charge from May 2, 2014 in Detroit, Michigan. (Id.)

On October 24, 2019, Plaintiff completed the testing portion of his naturalization interview, passing the civics portion and failing the writing portion, and participated in questioning from an Immigration Services Officer regarding his application. (ECF No. 5-2, PageID.23.) He did not disclose any other arrests or time spent in jail to the Officer. (Id.) On January 21, 2020, Plaintiff appeared for a re-examination interview, during which he passed the writing test and participated in questioning regarding his entire naturalization application. (Id.) Plaintiff again did not readily disclose any prior arrests or jail time and denied being arrested, other than for the 2014 incident listed in his application. (Id.) However, when the Officer specifically questioned him about the Iraq arrests listed in his Form I-589, Plaintiff became confused and began giving inconsistent statements while sworn under oath. (Id.; ECF No. 10-1, PageID.67.) The exact nature of

3

this inconsistent testimony is the main point of contention between the parties. Ultimately, the USCIS viewed the statements to be false testimony given under oath for the purpose of obtaining an immigration benefit. (ECF No. 5-2, PageID.24–25.) Due to the false testimony, the USCIS further found Plaintiff unable to establish by a preponderance of the evidence that he was a person of good moral character and therefore deemed him ineligible for naturalization.[1] (Id.) This denial of Plaintiff's Form N-400 was memorialized in a September 9, 2020 decision signed by Michael J. Klinger, the Director of the USCIS Detroit Field Office. (ECF No. 5-2, PageID.21–25.)

On September 25, 2020, Plaintiff filed a Form N-336, requesting a hearing to challenge the unfavorable September 9, 2020 decision as to his naturalization application. (ECF No. 1-1, PageID.3.) On July 14, 2021, he appeared with counsel for said hearing, providing testimony under oath regarding the details of his alleged prior false testimony. (ECF No. 10-1, PageID.66.) On April 26, 2022, USCIS Director Klinger issued a decision affirming the denial of Plaintiff's Form N-400. (ECF No. 1-1, PageID.3–5.) In relevant part, the decision contains the following reaction to the arguments Plaintiff made during the Form N-336 proceedings:

> On your Form N-336 in Part #4, you state: "However, when the examining officer brought up arrests in Iraq, I admitted I was arrested by agents of the former Iraqi government, and it was not a criminal arrest." With your Form N-336, you submitted a sworn affidavit. In that affidavit, you claim that your first attorney, Salwa Khatib, only asked you about criminal arrests and did not advise you to reveal non-criminal arrests. You claim you did not reveal your arrests in Iraq because they were not criminal arrests, you believed them to be irrelevant, and you had forgotten about them. You also claim during your second interview that you were confused and nervous. You then claim that you "informed the Officer

---

[1] The USCIS also found Plaintiff disqualified due to his failure to demonstrate his lawful admittance as a permanent resident. (ECF No. 5-2, PageID.25.) However, that defect was later found cured and is not the subject of this lawsuit. (See ECF No. 1-1, PageID.3.)

4

> that [you] forgot about [your] 2 arrests in Iraq because nothing criminal happened."
>
> Your arguments are not compelling. A review of the record shows that you did not disclose that you were arrested by agents of the former Iraqi government when the Officer brought up your arrests in Iraq. As described above, even after being confronted with the evidence of your arrests in Iraq you claimed you did not remember being arrested in Iraq. Finally, when you were asked "Do you remember talking in court with an interpreter?" you responded, "Yes the lawyer asked me why I had left Iraq. I told him I got 15 days in the jail. Because I was Catholic, that's why I left Iraq. From the Muslims." Later in your testimony, when the Officer asked you "Why did you tell me before you had never been arrested in Iraq?" you responded, "I swear I forgot, I swear I forgot. I am an honest guy. I have family here. I have kids and my family is here. I forgot about this one. I told the lawyer a long time ago. It was me and my dad. It was him too. They took me 15 days." Even if you did not believe your arrests to be relevant or believe them to be arrests, they are still detentions and you were asked separately if you had ever been in jail or prison to which you also responded "no" and then later stated that you had been detained for 2 days in 2014 in the U.S. and 15 days in 1997 in Iraq. You failed to disclose your 1999 arrest or detention in Iraq and the 5 days spent in jail in Iraq in 1999 at either of your N-400 interviews. This information was not disclosed until your Form N-336 hearing. The false testimony you provided was during your naturalization interviews in an attempt to gain the benefit of naturalization. Therefore, you have not established that you are a person of good moral character because, during the statutory period, you gave false testimony to obtain an immigration benefit. See Immigration and Nationality Act (INA) 316(a)(3). [sic]

(Id. at PageID.4–5.)

Plaintiff filed the present lawsuit on May 18, 2022 to challenge this finding by USCIS Director Klinger. (ECF No. 1.) In his Amended Complaint, approved for filing on July 20, 2022, Plaintiff concedes that he failed to disclose the Iraq arrests and gave inconsistent testimony. (ECF No. 10-1, PageID.67.) However, he asserts that the disclosure failure "was not an intentional omission of fact in order to obtain an immigration benefit." (Id.) Rather, both the disclosure failure and the inconsistent testimony were allegedly products of "bad advice from his previous attorney, nervousness at the interview, and a misunderstanding of the officer's questions; which

5

was exacerbated by his lack of mastery of the English language (as evidenced by his initial failure in passing the English language test)." (Id.) As such, Plaintiff characterizes his failure to disclose the two Iraq arrests as "harmless error that has no bearing on his eligibility for naturalization" and further characterizes USCIS Director Klinger's denial as "an abuse of discretion." (Id.) Plaintiff therefore seeks for the court to either review and favorably adjudicate his application for naturalization or remand the matter to USCIS with appropriate instruction. (Id.) In response, on August 3, 2022, Defendant USCIS Detroit District Director filed the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff is statutorily ineligible for naturalization, and thereby without a claim for relief, because he is unable to establish good moral character as a matter of law due to the prior false testimony he gave with the intent of obtaining an immigration benefit. (ECF No. 11, PageID.77.)

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient "state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Hensley Mfg.*, 579 F.3d at 609 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

The parties agree that Plaintiff has properly exhausted all administrative remedies at his disposal, thereby authorizing him to seek *de novo* judicial review from this court of USCIS' denial of his naturalization application. 8 U.S.C. § 1421(c). The ultimate issue in this case is whether Plaintiff is statutorily ineligible at this point in time to become a naturalized citizen. All lawful permanent residents seeking to become U.S. citizens through naturalization bear the burden of showing their eligibility for citizenship in every respect. *Berenyi v. Dist. Dir., Immigration & Naturalization Serv.*, 385 U.S. 630, 637 (1967). To that end, permanent residents must meet certain requirements under 8 U.S.C. § 1427, including sufficient periods of residency, physical presence, and a record of "good moral character." Here, the parties dispute whether Plaintiff can make the requisite showing of good moral character.

### A. Defendant's Argument

Defendant USCIS Detroit District Director contends that, as a matter of law, Plaintiff's Amended Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because he is statutorily ineligible for naturalization due to his lack of requisite good moral character. (ECF No. 11, PageID.85.) Defendant relies on 8 C.F.R. §

316.10(b)(2)(vi) and *Kungys v. United States*, 485 U.S. 759, 780 (1988), to argue that a naturalization applicant's false testimony, given with an intent to obtain an immigration benefit, precludes a finding of good moral character, no matter how immaterial the false statement. (Id. at PageID.86.) Defendant then asserts that Plaintiff clearly gave false testimony at both his October 24, 2019 and January 21, 2020 naturalization interviews, thereby precluding him from establishing good moral character in this case. (Id.) Specifically, Defendant asserts that the following statements provided under oath were demonstrably false: everything in Plaintiff's naturalization application was true and correct; Plaintiff had never been in jail; and Plaintiff's only arrest was in Detroit, Michigan in 2014. (Id. at PageID.86–87.) As support of their falsity, Defendant points to Plaintiff's open admission that he failed to disclose two days he spent in jail related to his 2014 arrest in Detroit, five days he spent in jail for his 1999 arrest in Iraq, and fifteen days he spent in jail for is 1997 arrest in Iraq. (Id. at PageID.87; *see* ECF No. 10-1, PageId.67.) Defendant further contends that, because Plaintiff made the statements as part of his naturalization interviews, they were done to gain the ultimate immigration benefit of naturalization. (ECF No. 11, PageID.87.) As such, Defendant argues that, as a matter of law under 8 U.S.C. § 1101(f)(6), Plaintiff cannot be regarded as a person of good moral character. (Id. at PageID.91.)

      Defendant also addresses what he characterizes as Plaintiff's conflicting excuses for his false testimony, contained in ¶24 and ¶25 of the Amended Complaint, arguing that they do not save Plaintiff's claim. (ECF No. 11, PageID.87; ECF No. 15, PageID.111.) First, Defendant contends that Plaintiff cannot use bad legal advice as a scapegoat for his false testimony because the Form N-400 expressly requires the

8

disclosure of the requested information even if the applicant has been counseled not to disclose it. (ECF No. 11, PageID.88–89.) Second, Defendant asserts that the record strongly belies the claim that Plaintiff's nervousness forced him to lie because the false statements contained within Plaintiff's Form N-400, which he affirmed later in his naturalization interview, were likely compiled at Plaintiff's leisure in a setting he controlled. (Id. at PageID.89.) Third and finally, Defendant challenges Plaintiff's claim of misunderstanding the arrest question because he disclosed his other 2014 arrest, he affirmed his understanding of every question in the Form N-400, his 17-year residence in the United States suggests that he has basic English language skills, and Plaintiff disclosed that he had been arrested in a 2011 adjustment of status application. Defendant additionally urges for the court to follow the persuasive authority of *Segid v. United States Citizenship & Immigr. Servs.*, 47 F.4th 545 (7th Cir. 2022).

### B. Plaintiff's Response

Plaintiff's response is procedurally focused. Plaintiff argues that Defendant's motion overlooks the core of his claim, which disputes what Defendant summarily concludes, that is, whether any false testimony was *intentionally* given. (ECF No. 13, PageID.100–01.) Plaintiff counters that the court should deny Defendant's motion because his Amended Complaint is well-pleaded with all legal conclusions supported by sufficient factual allegations. (Id. at PageID.102.) Specifically, Plaintiff asserts that his legal conclusion—USCIS erred in finding that Plaintiff willfully provided false testimony and thereby abused its discretion in finding he lacked good moral character—is factually supported through Plaintiff's contentions—receiving incorrect legal advice, nerves, and his misunderstanding of the Officers' questions. (Id. at PageID.103.) Plaintiff further

comments that it would not make sense for him to disclose a United Stated criminal arrest while intentionally forgoing disclosure of his Iraq political detentions. (Id.) Plaintiff concludes that these facts, when viewed in the light most favorable to him, render his claim facially plausible and one that the court should review *de novo*. (Id.)

### C. Analysis

The parties do not appear to dispute the sufficiency of Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 8 standards. Rather, they are at odds as to whether Plaintiff has been precluded from bringing this lawsuit because of USCIS' determination that Plaintiff was not a person of good moral character due to false testimony given during his naturalization interviews. Resolution of this impasse requires the court to evaluate what it means for a naturalization applicant to give false testimony as defined by 8 U.S.C. § 1101(f)(6).

The primary purpose of 8 U.S.C. § 1101(f)(6) is "to identify a lack of good moral character." *Kungys*, 485 U.S. at 780. Such absence "appears to some degree whenever there is a subjective intent to deceive, no matter how immaterial the deception." *Id.* Thus, it is dishonesty accompanied by a subjective intent of obtaining immigration benefits that Congress found morally unacceptable when crafting § 1101(f)(6). *Id.* Such issues of intent are to be resolved by the trier of fact. *Id.* at 782 (citing generally *Pullman-Standard v. Swint*, 456 U.S. 273 (1982) (issues of intent are factual matters for the trier of fact); *Berenyi v. District Director, INS*, 385 U.S. 630, 634–35 (1967)).

At its core, therefore, § 1101(f)(6) deems ineligible for naturalization those applicants who endeavor to lie in order to attain citizenship status. The precise question at the heart of this litigation then is whether Plaintiff lied on his Form N-400 to gain

10

naturalization. This is not a query the court can definitively resolve in a motion to dismiss because Defendant's motion puts the cart ahead of the horse. It would have the court determine as a matter of law that Plaintiff intended to deceive USCIS officers when failing to make a full disclosure of his arrest and incarceration records. The court cannot do so on this record. The credibility issue that Defendant argues conclusively bars Plaintiff's eligibility for naturalization is the very basis of Plaintiff's claim. Here, Plaintiff challenges the USCIS finding that he gave false testimony, as defined by 8 U.S.C. § 1101(f)(6), on grounds that the requisite intent to deceive was not present. Defendant's skepticism regarding the factual allegations that comprise Plaintiff's explanation for failing to disclose certain arrests and incarcerations does not somehow render them legally insufficient.

Furthermore, while the court does not necessarily find Defendant's skepticism to be unwarranted, the court does find plausible from the face of Plaintiff's Amended Complaint the allegation that the USCIS decision overlooked whether Plaintiff possessed an intent to deceive. A reasonable decisionmaker could question whether Plaintiff possessed deceitful intent based on the fact that he disclosed his Iraq arrests in every other application submitted to the relevant immigration authorities. Further, the court does not readily glean deceit from failing disclose the details of his arrests in Iraq—which formed the basis of his asylum claim and were accepted as sufficient to grant him asylum—when Plaintiff did disclose his 2014 arrest, which arguably would have been more likely to disqualify him from being naturalized. As such, Defendant's motion to dismiss is premature. The merits of Plaintiff's claim implicate live credibility

11

issues that must be resolved through further proceedings once a full record is before the court for its *de novo* review.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss is denied. Plaintiff's Amended Complaint (ECF No.10-1, PageID.64–68) sufficiently meets the requirements of Federal Rule of Civil Procedure 8 to survive dismissal at this juncture. Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper only when a petitioner can prove no set of facts in support of his claim that would entitle him to relief. Here, it is plausible that Plaintiff could convince the court that he had no intent to deceive USCIS hearing officers, thereby undermining Defendant USCIS District Director's finding of bad moral character and potentially restoring Plaintiff's eligibility to be naturalized. He should be afforded that opportunity. Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss (ECF No. 11) is DENIED.

s/Robert H. Cleland                  /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 10, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 10, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner                  /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\EKL\Opinions & Orders\Civil\22-11080.DAWOOD.MTD.EKL.docx

12